UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

—————————————————————X

DAVID PRONK,                                    CIVIL ACTION

    Plaintiff                                   NO. 04CV11834 (RWZ)

VS.

NATIONAL RAILROAD PASSENGER
  CORPORATION,

    Defendant                                   MARCH 18, 2005

—————————————————————X


### AMENDED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED MOTION TO COMPEL[1]

The plaintiff submits this Amended Memorandum in support of his Amended

Motion To Compel filed this same day. Undersigned counsel and defendant's counsel,

Paul E. Dwyer, Jr., held good faith conferences pursuant to Fed. R. Civ. P. 37 and D.

Mass. Loc. R. 37.1 on February 25, 2005 from 11:00 a.m. to 12:30 p.m. and on

Monday, February 28, 2005 from about 10:00 a.m. to 10:05 a.m.

---

[1] The plaintiff's original Motion To Compel and Memorandum in support thereof is dated March 16, 2005. The plaintiff has withdrawn the March 16 dated Motion and Memorandum and submitted this Amended Memorandum and an Amended Motion in its place .

The detailed topics and results of the conference are set forth in Appendix A attached hereto, and hereby included herein.

## I. NATURE OF CASE

The plaintiff was employed as an Amtrak conductor. He brings this lawsuit pursuant to the Federal Employers' Liability Act Title 49 U.S.C. § 51 et seq.

On August 8, 2003 the plaintiff injured his right ankle and foot, his low back and his head when unsecured baggage carts in a train's baggage car rolled into him and knocked him off a train and onto the tracks. He was on the rear end of a train and pulled the brakes when the train's locomotive engineer failed to slow the train down in order to stop for a red signal. The sudden stop caused the baggage carts to roll into the plaintiff. The plaintiff claims that the Railroad failed to provide him with a safe place to work because unsecured baggage carts should not have been placed in the train's baggage car and that the engineer failed to properly stop the train. As a result of the accident, he has been unable to do his job as a conductor. He has also undergone two (2) surgeries to his right foot and ankle and has permanent nerve damage to his right foot.

## II. LAW

### A.    Reasonably Calculated To Lead to The Discovery of Admissible Evidence

Plaintiff's requests need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

### B. Work-Product Doctrine

"The burden is on the party resisting discovery to establish that the documents are protected by work product. . . . In order to qualify for protection under the work product doctrine, the material in question must (1) be a document or tangible thing; (2) which was prepared in anticipation of litigation; (3) be prepared by or for a party, or by or for its representatives . . . . A 'dual purpose' document may be protected by work product if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." (Cites and quotations omitted) Amica Mutual Ins. Co. v. W.C. Bradley Co., 217 F.R.D. 79, 82-83 (D. Mass. 2003).

Documents prepared and obtained in the ordinary course of business do not constitute work-product. Amica Mutual Ins., 217 F.R.D. at 82; Pasteris v. Robillard, 121 F.R.D. 18, 20 (D. Mass. 1988); Sham v. Huannis Heritage House Hotel, Inc., 118 F.R.D. 24, 26 (D. Mass. 1987). Investigations by insurance companies are not per se conducted in anticipation of litigation as opposed to the ordinary course of business and the Courts should make a determination on a case-by-case basis. Amica 121 F.R.D. at 82.

## III. REQUESTS AT ISSUE

**Request 13**:  All injury and accident investigative and inspection reports, records, documents, notes, and findings pertaining to the injury and accident that forms the basis of the present complaint, including but not limited to any Informal Investigation Sheet; Summary Report of Personal Injury; Accident/Injury Report; Personal Injury Report; Supervisor's Injury Report, Mechanical Facility Inspection Reports, Three-Man Reports and Committee Reports (and all drafts of the aforementioned).

**Defendant's Response**:  Objection is made to this request for the reason it is overly broad and burdensome.  Without waiving this objection, the following answer is given: Plaintiff is referred to defendant's response to RFP 1 and 5.

**Request 15**.  All documents, notes, emails, electronic files or memoranda prepared after the accident by anyone involved in investigating the accident or reporting thereon.

**Defendant's Response:**  Objection is made to this request for the reason that it is overly broad and burdensome and requests information that may be privileged.  Without waiving this objection please refer to response no. 1.

Requests 13 and 15 concern documents relating to the accident that is the subject of the lawsuit.  The plaintiff agreed to limit the scope of the requests so they do not cover any claim department personnel generated documents <u>after</u> Amtrak received notice the plaintiff hired counsel in connection with the accident.  Defense counsel provided a privilege log on March 15, 2005.  The railroad's privilege log simply states "one page of handwritten notes prepared by Seth Starr, Amtrak Claims Manager, undated, which discusses generally, the circumstances of the incident and the plaintiff's injuries."  The plaintiff seeks an order overruling all the railroad's objections and

compelling responsive documents to Requests 13 and 15 because they are clearly discoverable and likely admissible.

With respect to the one document the railroad identified in its privilege log, the railroad failed to meet its burden that the document was not generated in the ordinary course of a claim agent's duties. See Amica Mutual Ins., 217 F.R.D. at 82; Pasteris, 121 F.R.D. at 20; Sham, 118 F.R.D. at 26. Since the railroad has the burden of proving the privilege applies and has not met its burden, the Court should also compel production of the one page, undated document.

**Request 27:** A copy of all rules and written instructions governing plaintiff's craft or occupation at the time of the accident including but not limited to Rule Books, Safety Instructions, Directions, Special Instructions, Orders, Regulations, Customs, Practices, Operating Rules and Bulletins.

**Defendant's Response**: Objection is made to this request for the reason that it is overly broad and burdensome. Without waiving the objection, please see those documents attached hereto as Exhibit D.

The rules and regulations applicable to the plaintiff are likely to contain relevant evidence to help rebut the defendant's affirmative defense that the plaintiff was negligent. The plaintiff contends he acted in conformity with railroad's rules. The railroad cannot just produce rules it wants to use to show the plaintiff was not acting reasonably at the time of the accident. Accordingly, the railroad should be compelled to produce all rules and regulations applicable to the plaintiff at the time of the accident.

**Request 26:** All written, oral, taped, signed and unsigned statements and any memoranda thereof or pertaining thereto that were made concerning the plaintiff's accident.

**Defendant's Response**:   objection is made to this request for the reason that it requests items that may be privileged and protected as work product.  Further, the request duplicates requests made previously.

The plaintiff is entitled to all statements taken after the accident and memoranda of statements.  Any statements were obviously taken in the ordinary course of business of the railroad and should be produced.  The burden is on the railroad to establish statements are privileged and it has failed to meet its burden.  Pasteris, 121 F.R.D. at 21; Sham, 118 F.R.D. at 26.  In defendant's supplemental discovery response, it represents there are no statements other than ones already produced.  However, the defendant failed to withdraw its objections to this request.  Thus, the plaintiff seeks to have the court overrule the defendant's objections and make it clear the defendant is under a continuing obligation to produce any responsive documents that have not yet been located and, if necessary, allow the plaintiff with a remedy in the event there is any unjustified failure to produce responsive documents.

Accordingly, the Court should order the railroad to produce all responsive statements and memoranda.

**Request 28**.    All records of disciplinary actions including transcripts, exhibits, correspondence and documents pertaining to any type of disciplinary actions, charges, hearings, (formal or informal hearing), and investigations concerning any of defendant's employees involved in the plaintiff's accident and/or injury which forms the basis of this complaint.

**Defendant's Response**:  Objection is made to this request for reason that it is overly broad and burdensome, requests items that are privileged and confidential and requests items not calculated to lead to the discovery of admissible evidence.

Evidence of subsequent disciplinary actions and proceedings are admissible to prove (1) the plaintiff was not disciplined; (2) admissions of the railroad pertaining to the accident; and (3) to show the railroad's position to discipline employees other than a plaintiff after an accident is inconsistent with the railroad's position at trial that other employees were not responsible for the accident.  See Panger v. Duluth, Winnepeg and Pacific, RR Co., 490 F.2d 1112, 1117 (8th Cir. 1974); Hval v. Southern Pacific Transportation Co., 39 Ore. App. 479, 485; 492 P.2d 1049 (Ct. App. Or. 1979).

Accordingly, the Court should order the railroad to produce all responsive documents sought by this request.

**Request 3:** The Defendant's Claim Department's full and complete medical files, documents, notes and reports pertaining to the plaintiff, including but not limited to any and all prior injuries or claims, as well as the injury which forms the basis of the present complaint.

**Defendant's Response:** Objection is made to this request for the reason that it is overly burdensome and not limited in time.  Without waiving this objection, the following response is provided: please see our responses to requests no. 1, 4, and 5.

The plaintiff represented he is seeking the Claim Department's medical files, medical documents, medical notes and medical reports pertaining to the plaintiff.   The plaintiff agreed to limit the request so that it does not encompass claim adjuster notes or summaries prepared by the claim agent after a letter of retention was received by the

7

railroad with respect to the plaintiff. The railroad refused to withdraw its objections. The plaintiff seeks an order overruling the railroad's objections and compelling the railroad to produce responsive documents.

## NO OBJECTIONS - ORDER FOR PRODUCTION BY DATE CERTAIN

With respect to Requests 5, 7, 8, 18, 21, 25 and interrogatory 2(b), the railroad did not object, but the plaintiff seeks an order compelling production by a date certain. Defense counsel represented it would make supplemental production no later than March 14. However, as of March 18, the defendant has failed to provide supplemental production. In the event supplemental production is made, these matters may be withdrawn from the instant motion.

**Request 7:** All prior injury and accident reports pertaining to the plaintiff in the custody of the Defendant's Claim Department, Safety Department, or any department the plaintiff ever worked in, including but not limited to any Informal Investigation Sheet, Summary Report of Personal Injury or Committee Reports.

On March 18, plaintiff's counsel spoke to defense counsel and requested prior injury and accident reports. Defense said he would look into getting responsive documents.

**Request 8:** All prior inspection, maintenance and repair records, whether special or regular, regarding or referring to the baggage carts and the baggage car involved in this accident for the period of five years prior to the date of the plaintiff's injury up to the present.

The railroad supplemented its answer with respect to baggage carts and represented there are no maintenance or inspection records of the carts from the last three years. The defendant has not produced any responsive records pertaining to the baggage car.

**Request18:** All event recorder data from 30 minutes before the accident through ten minutes after the accident.

The defendant produced an unreadable computer disc and agreed to produce a computer printout of the data. However, the defendant has not yet produced the computer printout of the event recorder data.

**Request 21:** The full and complete attendance record of the plaintiff for the three years prior to the date of the injury which forms the basis of the present complaint through the present including but not limited to all jobs and overtime worked and all time marked of sick or old injury.

Attendance records have not yet been produced.

**Interrogatory 2(b):** Identify all person(s): who authorized the baggage carts to be loaded into the baggage car on or about the day of the plaintiff's accident and the specific employees and foreman responsible for moving said baggage carts and placing them in the baggage car.

With respect to Interrogatory 2(b), the defendant supplemented its answer with the names of two employees who were instructed to put the baggage carts in the baggage car but failed to provide the name of the person who authorized the baggage carts to be loaded. In the defendant's supplemental response to interrogatory 8, it

admitted the two employees were instructed to put the baggage carts on the baggage car. Undersigned counsel called defense counsel on March 15, after receiving the railroad's supplemental interrogatory response, and requested the name of the person who authorized the two individuals to move the carts. Defense counsel responded that the plaintiff did not need this information to prove his case. The plaintiff seeks an order compelling the railroad to identify the individual who authorized the carts to be loaded onto the baggage car.

**Request 5**: The Defendant's Vocational Assistance Program's and the Defendant's department responsible for compliance with the American with Disabilities Act (ADA) full and complete files pertaining to the plaintiff including but not limited to all correspondence with or about the plaintiff.

The railroad did not object to this request but only produced two letters and one email concerning the plaintiff. The plaintiff spoke with Amtrak's Transitional Duty Officer, Jacqueline Reardon, approximately 15 - 20 times since July of 2004 about his work status. The plaintiff believes that notes from Ms. Reardon's phone conversations or memoranda were likely created setting forth what she claims the plaintiff said during these conversations. Undersigned counsel spoke with defense counsel on March 18, 2005 at 2:55 p.m. for less than one minute. Defense counsel represented that he would produce responsive documents if they exist. The plaintiff seeks an order requiring production of all responsive documents, including any notes or memoranda of discussions with the plaintiff, by a date certain.

**Request 25:**  All plaintiff's written statements (signed or unsigned) or taped oral statements and all memoranda concerning, or summaries of plaintiff's statements, written or oral, that were made pertaining to the accident and injury which forms the basis of the present complaint

The plaintiff received regular calls from a Continuum caseworker named Jody shortly after his August 2003 injury.  These regular calls continued through 2004. Amtrak produce three pages of what appear to be caseworker notes covering the time period from August 2003 to October of 2003. (Attached hereto as App. B).  The notes are replete with quotes attributable to the plaintiff.  Undersigned counsel called defense counsel on March 18, 2005 and spoke to him from about 9:45 a.m to 9:50 a.m. to explain that it is highly probable there are more notes and reports than the three pages that were produced.  Defense counsel represented that he produced all the notes he had but he would check again.

In a different case pending in the District of Massachusetts, "Continuum Case Reports" were produced by Amtrak as part of that plaintiff's medical file.  The Reports are replete with quotes from the plaintiff in the other case concerning his medical condition.  A redacted report from the other Amtrak case is attached hereto as App. C. In the instant case, it appears highly probable Amtrak has similar reports and memoranda of statements concerning Mr. Pronk's injuries since the caseworker for

Continuum spoke with the plaintiff on many more occasions than are reflected in the two month's worth of notes that were produced.

Accordingly, Amtrak should be compelled to produce these reports and statements by a date certain.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion to Compel should be granted in its entirety and the defendant's objections to the foregoing requests for documents should be overruled.

Respectfully submitted,

FOR THE PLAINTIFF, DAVID PRONK

By _Scott Perry_
Scott E. Perry
George J. Cahill, Jr. (BBO #069480)
CAHILL, GOETSCH & MAURER, P.C.
43 Trumbull Street
New Haven, Connecticut  06510
(203) 777-1000

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid on this _18_ day of March, 2005, to Paul E. Dwyer, Jr., Esq., Edwards & Angell, LLP, 2800 Financial Plaza, Providence, Rhode Island  02903.

Scott E. Perry

**CAHILL & GOETSCH, P.C.**
ATTORNEYS AT LAW
43 TRUMBULL STREET
NEW HAVEN, CT 06510
203-777-1000
FAX: 203-865-5904
www.trainlaw.com

SCOTT E. PERRY
scott@trainlaw.com

NEW YORK OFFICE:
ONE CROTON POINT AVENUE
CROTON-ON-HUDSON, NY 10520
914-271-9474
FAX: 914-271-9476

February 28, 2005

**_Via Fax and U.S. Mail_**

Paul E. Dwyer, Jr., Esq.
Edwards & Angell, LLP
2800 Financial Plaza
Providence, Rhode Island  02903

RE:   _David Pronk vs. National Railroad Passenger Corporation_
      C.A. No.: 04CV11834 (RWZ)

Dear Attorney Dwyer:

I write to confirm the results of our Rule 37 Conference on February 25, 2005 which lasted from 11:00 a.m. to approximately 12:30 p.m. and on February 28th from about 10:00 a.m. to 10:05 a.m.

With respect to Requests 1, 2, 14, 16, 17, 18, 21, 22, 33, 34 and 35, Amtrak has no objections but I explained that most of the production does not appear to be complete. (i.e. no payroll or attendance records or no medical records from prior accidents, no job description sheet).  For example, with respect to Request 14 you stated Amtrak would produce all owner's manuals, invoices and receipts for the baggage carriers and maintenance records (with respect to maintenance records the plaintiff limited the time frame to 3 years prior to the accident).  With respect to Request 16 you stated there was a map of the yard and you would produce it.  You agreed to provide supplemental responses no later than March 14th.

With respect to 17 and 18 taped radio communications and event recorder data, you stated you and Amtrak still do not know if they exist and would confirm this no later than March 14th.

With respect to Requests 3, the plaintiff agreed to narrow the request so that it does not cover claim adjuster notes or claim adjuster summaries taken after a letter of retention was received by Amtrak with respect to the plaintiff.  You did not agree to withdraw objections but did agree to produce a privilege log.

Paul E. Dwyer, Jr., Esq.
February 28, 2005
Page 2

With respect to Request 7, the plaintiff agreed to limit the scope of the request so that it did not seek claim adjuster notes or summaries and you agreed to withdraw all objections and get us all prior accident and injury reports including safety committee reports; accident reports and injury/illness reports pertaining to the plaintiff.

With respect to Request 8 you agreed to withdraw Amtrak's objections and produce responsive documents by March 14th on the condition the plaintiff reduced the time frame covered from five years to three years.

With respect to Request 9 you agreed to withdraw Amtrak's objections.

With respect to Request 13, you would not withdraw your objections but agreed to produce a privilege log no later than March 14th.

With respect to Request 15, plaintiff agreed to limit this so that it does not cover claim adjuster notes or logs prepared after a letter of retention was received. You maintained your objections but agreed to provide a privilege log no later than March 14th.

With respect to Request 24 and Interrogatories 18 and 19 (surveillance materials and records) you agreed to withdraw Amtrak's objections and produce responsive materials and respond to the interrogatories within ten days after the plaintiff's deposition.

With respect to Request 37, you withdrew Amtrak's objections.

With respect to interrogatory 1, 8 and 10, you withdrew Amtrak's objections.

With respect to interrogatory 2(b) you said you would supply an answer no later than March 14th.

With respect to interrogatory 13, you agreed to get us a responsive answer re: total wage loss for time absent from work since the accident, without conceding any of it is related to the accident no later than March 14th.

With respect to Requests 13, 15, 26 and 3 you agreed to get us a privilege log no later than March 14th but would not withdraw your objections.

Paul E. Dwyer, Jr., Esq.
February 28, 2005
Page 3


Although many issues were resolved, the plaintiff intends to file a motion to compel with respect to Requests 13, 15, 26, 27 and 28. We also will include in the motion some requests and interrogatories which you claimed you will supplement by March 14 in the event a satisfactory response is not received by that time. In the event satisfactory responses are received, we will withdraw them from our motion.

If this letter does not accurately reflect our conferences regarding plaintiff's first requests for production and interrogatories, please contact me promptly.

Sincerely,

Scott E. Perry

SEP:md

| Need Help? Have Comments? CLICK HERE | | | | Options | ▼ | |

| Claim: 79388 0001 | SSN: 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 | | Name: David Pronk | | |
| DOI: 08/08/03 | ICD9: | Description: | | | |

| Claimant Info | Notes | Clinical Data | FROI | Treatment Plan | Billing | E |

NOTE : Please use communications in the options menu to send Directives to Nurse (with Review Request)

Notes | Last 10 Notes ▼ | Rev Archives: **Show Archives** | ICC Archives **Show Archives**

ICC NOTES: *****ICC NOTES (10/13/03, mon, 1:03 PM) JKS

SYMPTOMS: David states that his right foot in terrible. David continues to experience right heal nur is not bearing full weight. David continues to experience lower back soreness with restricted ROM.
MEDICAL TREATMENTS: David continues with Physical Therapy. On 10/6/2003 appt. with Dr. Dalton an exam. On 10/7/2003 appt. with Dr. Creevy. He had an exam, an EMG/NC test was ordered and for 10/21/2003. Next appt. with Dr. Dalton is on 10/27/2003. Next appt. with Dr. Creevy is on 11/<
WORK STATUS:Off duty.
PRIOR INJURY HISTORY:


Mr. Pronk reports his low back remains sore with restricted ROM. He experiencing numbing in his ri He is unable to bear full weight on his foot.

Medical documentation has been attached to the file for review.

A Bay State physical therapy evaluation dated 9/8/03 was reviewed. He was referred by Dr.'s Dalto Creevy for therapy for plantar faciitis and lumbar strain. Treatment plan is for modalities, strengthe stretching, proprioception/balance, iontophoresis, stim, education , gait training and HEP, 3times a weeks.

A return fax from Dr. Dalton confirms that diagnosis. He writes that Mr. Pronk may return to modifi ( estimated) on 11/21/03 with a restriction of no lifting over 10 lbs. He estimates a return to full du 12/21/03.

Mr. Pronk is within the EDD of up to 107 days for these diagnosis.

Dr.'s Dalton and Creevey have been contacted for current medical status and Mri results.
M.Cass,RN

ICC NOTES: *****ICC NOTES (09/19/03, fri, 11:47 AM) JKS

SYMPTOMS: David states that his lower back remains sore. He states his back ROM is restricted. Da continues to experience numbing in his right heal. he is not bearing full weight onto his foot.
MEDICAL TREATMENTS: On 9/4/2003 appt. with Dr. Creevy. He had an exam and PT was prescribe started PT at BayState Physical Therapy on 9/8/2003 for three times a week (confirmed with facility appt. with Dr. Dalton on 10/6/2003. Next appt. with Dr. Creevy is on 10/7/2003.
WORK STATUS: Off duty.

PRIOR INJURY HISTORY:

See previous notes for symptoms.

Dr. Breevy and Dr. Dalton have been contacted for medical documentation as there is no medical documentation available for case managment.

Will diary claim for one week. If medicals are not obtained will consider a medical evaluation.

ICC NOTES: *****ICC NOTES (09/02/03, tue, 3:10 PM) JKS

SYMPTOMS:David states that his right arm is fine. David states that his right heal is numb. He state takes a step he experiences an electrical sensation in his calf. David is not bearing full weight onto walks on his toes. David experineces back pain with restricted ROM.
MEDICAL TREATMENTS: On 8/14/2003 appt. with Dr. Breevy at Boston Medical Center (Orthopedic had an exam. On 8/25/2003 appt. with PCP, Dr. Dalton. He had an exam. David states he had a MI was unable to provide a date). Next appt. with Dr. Breevy is on 9/4/2003. David states he has an a Dr. Dalton next week, but could not provide a date. Per Dr. Dalton's office, David does not have a f appt. scheduled.
WORK STATUS: Off duty.
PRIOR INJURY HISTORY:

ICC NOTES: *****ICC NOTES (09/02/03, tue, 2:31 PM) JKS

SYMPTOMS:
MEDICAL TREATMENTS: David called in with Provider information. Dr. Kohler.
Dr. Kohler ordered a MRI and needs approval for the MRI.
WORK STATUS:
PRIOR INJURY HISTORY:

On 8/11/03 a phone call was received from from Dr.Kohler's office,( covering for Dr. B. Dalton his p office states that Mr. Pronk called in and states that he was initially evaluated by Dr. Tornetta at Bo Medical Center who had advised him to have an Mri to his right foot and lumbar spine prior to his e on 8/14/03.

There is no medical documentation to date. Dr.Kohler's office was provided with Fela information. A been prepped for Dr. Tornetta's evaluation of 8/14/03. The office was advised of Amtrak's modified/transitional duty program. The Mri should give further direction to this claim. The disability will be discussed at that time.
M.Cass,RN

ICC NOTES: *****ICC NOTES (08/11/03, mon, 9:55 AM) JKS

SYMPTOMS: David states he is achey all over. David experiences right foot pain and swelling. He is bear weight onto his foot. He states his right arm is bruised and sore. David experiences back pain restricted ROM.
MEDICAL TREATMENTS:On 8/8/2003 David was taken via ambulance to Boston Medical Center. He

Morphine while at the hospital. He had x-rays taken, a cast boot was put on from his knee to his foot were given and Percocet was prescribed. David was taken off duty. David has an appt. with an Orth 8/12/2003. He was unable to provide provider information, his wife has all of the paper work and st work. David states he will call back with the Orthopedic information.
Faxed for medicals.
WORK STATUS:Off duty.
Confirmed work status with Hana Fidel, Supervisor.
PRIOR INJURY HISTORY:None.

# Continuum Case Report

| Report Date: | Report Type: | Claims Agent: | S3 Incident #: |
|---|---|---|---|
| 11/22/02 | Progress Assessment | Michelle R. Milot | 74369 0001 |
| **Did you know about RCDO® ?:** | | **Participate in RCDO® ?:** | |

## PATIENT DEMOGRAPHICS:

| Name: | SSN: | Date of Birth: | Age: | Sex: |
|---|---|---|---|---|
| | | | 43 | Male |
| **Address:** | | | **Marital Status:** | **Home Phone #:** |
| **Occupation:** | | **Work Schedule:** | | |
| B&B Mechanic | | 7:00 am - 3:30 pm | | |

## EMPLOYMENT DEMOGRAPHICS:

| Employer/Client: | Amtrak Claims | ResCen: |
|---|---|---|
| Amtrak | Boston Claims Office | 7064 Supv Bridges Bldg South |
| **Supervisor Name:** | **Supervisor Phone:** | **Date of Hire:** |
| Patricia Mallon | 617-222-5336 | |

## CASE INFORMATION & UPDATES:

| Date of Injury: | Date Rpt to Continuum | Case Manager: | ICC: |
|---|---|---|---|
| | | Louise King | Jody Samuelson |
| **Primary ICD9:** | | **Accident / Illness:** | |
| 831.04    Dislocation Of Acromioclavicular Joint | | Shoulder, Contusion, Fall-Same Level | |

| Total LT Days: | Current LT Days: | Modified Days: | Curr Mod Days: | Total N/A Days | Curr N/A Days |
|---|---|---|---|---|---|
| 81 | 81 | 0 | 0 | 0 | 0 |

| Current Work Status: | Next Scheduled Activity: |
|---|---|
| off duty since 08/01/02 | Currently In Review |
| **Close Reason:** | **Case Status:** |
| | Open |

## PRIMARY PROVIDER:

| PRIMARY PROVIDER: | Other Provider: | Other Provider: |
|---|---|---|
| Lahey Clinic Medical Center Orthopedic Surgeon 781-744-5100 | Milton Hospital General Hospital 617-696-4600 | Lahey Clinic Physical Therapy Free Standing Physical Therapy Center 781-744-8617 |

## CONTINUUM CASE MANAGEMENT OVERVIEW / PROPOSED PLAN OF ACTION:

**SYMPTOMS:** ▉experiences right hand pain with inclement weather. He experiences a knot on his right shoulder. He states the right thumb is sore and tender. He states the right thumb swelling has subsided. ▉experiences frequent left arm numbing.

**MEDICAL TREATMENTS:** Physical therapy continues two times a week...▉states the Therapist discussed cortisone injections for his right hand. On 10/31/2002 appt. with Dr. Tilzey. He had an exam, a MRI was ordered for the neck and done on 11/21/2002. Next appt. with Dr. Tilzey is on 12/4/2002.

**WORK STATUS:** Off duty.

**PRIOR INJURY HISTORY:**

# Continuum Case Report

| Report Date: | Report Type: | Claims Agent: | S3 Incident #: |
|---|---|---|---|
| 10/01/2002 | Progress Assessment | Michelle R. Milot | 74369 0001 |

| Did you know about RCDO® ? | Participate in RCDO® ? |
|---|---|
| | |

## PATIENT DEMOGRAPHICS:

| Name: | SSN: | Date of Birth: | Age: | Sex: |
|---|---|---|---|---|
| | | | 43 | Male |

| Address: | | | Marital Status: | Home Phone #: |
|---|---|---|---|---|
| | | | | 617-696-2519 |

| Occupation: | Work Schedule: |
|---|---|
| B&B Mechanic | 7:00 am - 3:30 pm |

## EMPLOYMENT  DEMOGRAPHICS:

| Employer/Client: | Amtrak Claims | ResCen: |
|---|---|---|
| Amtrak | Boston Claims Office | 7064 Supv Bridges Bldg South |
| Supervisor Name: | Supervisor Phone: | Date of Hire: |
| Patricia Mallon | 617-222-5336 | |

## CASE INFORMATION & UPDATES:

| Date of Injury: | Date Rpt to Continuum | Case Manager: | ICC: |
|---|---|---|---|
| | | Louise King | Jody Samuelson |

| Primary ICD9: | Accident / Illness: |
|---|---|
| 923.00      Contusion, Shoulder | Shoulder, Contusion, Fall-Same Level |

| Total LT Days: | Current LT Days: | Modified Days: | Curr Mod Days: | Total N/A Days | Curr N/A Days |
|---|---|---|---|---|---|
| 43 | 43 | 0 | 0 | 0 | 0 |

| Current Work Status: | Next Scheduled Activity: |
|---|---|
| off duty since 08/01/2002 | Currently in Review |

| Close Reason: | Case Status: |
|---|---|
| | Open |

| PRIMARY PROVIDER: | Other Provider: | Other Provider: |
|---|---|---|
| Lahey Clinic Medical Center Orthopedic Surgeon 781-744-5100 | Milton Hospital General Hospital 617-696-4600 | Lahey Clinic Physical Therapy Free Standing Physical Therapy Center 781-744-8617 |

## CONTINUUM CASE MANAGEMENT OVERVIEW / PROPOSED PLAN OF ACTION:

SYMPTOMS: ▆▆ states his right hand continues to be well. He states the strength is not there in his right hand. ▆▆ states the knot in his right shoulder remains the same.  He states when raising his right arm to a certain point he will experience pain in his right shoulder and N&T in his left arm.  He experiences swelling and minor pain of his right thumb.
MEDICAL TREATMENTS: On 9/5/2002 appt. with Dr. Tilzey. He had an exam and 8 weeks of physical therapy was ordered. Jeff had his PT evaluation at Lahey Clinic Physical Therapy Department on 9/17/2002. PT started for the right shoulder on 9/26/2002 for two times a week (confirmed with facility).   Next appt. with Dr. Tilzey is on 10/31/2002.
WORK STATUS:  Off duty.
No RTW date.
PRIOR INJURY HISTORY: